**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**CHRISTOPHER WALTERS**

**Plaintiff,**

**vs.** **6:22-CV-1141 (MAD/TWD)**

**CAMP SAVER, LLC,**

**Defendant.**

---

| **APPEARANCES:** | **OF COUNSEL:** |
| --- | --- |
| **NYE, STIRLING, HALE, MILLER & SWEET LLP**<br>1145 Bower Hill Road<br>Suite 104<br>Pittsburgh, Pennsylvania 15243<br>Attorney for Plaintiff | **BENJAMIN SWEET, ESQ.** |
| **NYE, STIRLING, HALE, MILLER LLP**<br>33 W. Mission Street<br>Ste. 201<br>Santa Barbara, California 93101<br>Attorney for Plaintiff | **JONATHAN D. MILLER, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On November 2, 2022, Christopher Walters ("Plaintiff"), commenced this action against Camp Saver, LLC ("Defendant") alleging violations of (1) Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189; (2) New York State Human Rights Law ("NYSHRL") N.Y. Exec. L. § 296 (2019); and (3) New York State Civil Rights Law, Article 4. *See* Dkt. No. 1 at ¶¶ 1, 47, 64. Plaintiff alleges that Defendant failed to make its digital platform

accessible to legally blind individuals. *See id.* Presently before the Court is Plaintiff's unopposed motion for default judgment. *See* Dkt. No. 13. For the following reasons, the motion is granted.

## II. BACKGROUND

Defendant is a Utah limited liability company and "a leader in the sale and distribution of camping, hiking, climbing and snow gear, as well as other related outdoor accessories under its recognized brand name Camp Saver." Dkt. No. 1 at ¶ 13. Plaintiff is a resident of Utica, New York, and, "at all relevant times hereto," has been and is "totally blind." *See id.* at ¶ 12. Plaintiff seeks payment of costs of suit, nominal damages, compensatory damages for violations of Plaintiff's civil rights under NYSHRL, and reasonable attorneys' fees, pursuant to 42 U.S.C § 12205 and 28 C.F.R. § 36.505, including costs of monitoring Defendant's compliance with the judgment. *See* Dkt. No. 1 at 20; *see also* Dkt. No. 13 at 12-15. Plaintiff also invokes 42 U.S.C. § 12188(a)(2) and seeks prospective injunctive relief requiring Defendant to:

> a) Retain a qualified consultant acceptable to Plaintiff ("Web Accessibility Consultant") who shall assist in improving the accessibility of its Digital Platform, including all third-party content and plug-ins, so the goods and services on the Digital Platform may be equally accessed and enjoyed by individuals with vision related disabilities;
>
> b) Work with the Web Accessibility Consultant to ensure all employees involved in Digital Platform and content development be given web accessibility training on a biennial basis, including onsite training to create accessible content at the design and development stages;
>
> c) Work with the Web Accessibility Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Digital Platform may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;
>
> d) Work with the Web Accessibility Consultant to perform end-user accessibility/usability testing on at least a quarterly basis with said

testing to be performed by humans who are blind or have low vision, or who have training and experience in the manner in which persons who are blind use a screen reader to navigate, browse, and conduct business on Digital Platforms, in addition to the testing, if applicable, that is performed using semi-automated tools;

e) Incorporate all of the Web Accessibility Consultant's recommendations within sixty (60) days of receiving the recommendations;

f) Work with the Web Accessibility Consultant to create a Web Accessibility Policy that will be posted on its Digital Platform, along with an e-mail address, instant messenger, and toll-free phone number to report accessibility-related problems;

g) Directly link from the footer on each page of its Digital Platform, a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Digital Platform to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant through the Digital Platform;

h) Accompany the public policy statement with an accessible means of submitting accessibility questions and problems, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

i) Provide a notice, prominently and directly linked from the footer on each page of its Digital Platform, soliciting feedback from visitors to the Digital Platform on how the accessibility of the Digital Platform can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

j) Provide a copy of the Web Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Digital Platform;

k) Train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Digital Platform. Defendant shall have trained no fewer than 3 of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant

> shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance;
>
> l) Modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Digital Platform to be inaccessible to users of screen reader technology;
>
> m) Plaintiff, his counsel, and their experts monitor the Digital Platform for up to two years after the Mutually Agreed Upon Consultant validates the Digital Platform is free of accessibility errors/violations to ensure Defendant has adopted and implemented adequate accessibility policies. To this end, Plaintiff, through his counsel and their experts, shall be entitled to consult with the Web Accessibility Consultant at their discretion, and to review any written material, including but not limited to any recommendations the Digital Platform Accessibility Consultant provides Defendant

Dkt. No. 1 at ¶ 17.

## III. Discussion

### A. Standard of Review

"Generally, 'Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant.'" *United States v. Simmons*, No. 10-CV-1272, 2012 WL 685498, *2 (N.D.N.Y. Mar. 2, 2012) (quoting *Robertson v. Doe*, No. 5-CV-7046, 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008)). "First, under Rule 55(a), when a party fails to plead or otherwise defend . . . the clerk must enter the party's default." *Id.* (quotation marks and citation omitted); *see also* FED. R. CIV. P. 55(a). Local Rule 55.1 requires the party requesting an entry of default to submit an affidavit showing that the party against whom judgment is sought is "not an infant, in the military, or an incompetent person," that the party has "failed to plead or otherwise defend the action," and that the party has been "properly served the pleading" without responding. N.D.N.Y. L.R. 55.1.

"Second, pursuant to Rule 55(b)(2), the party seeking default is required to present its application for entry of judgment to the court." *Simmons*, 2008 WL 685498, at *2 (citation omitted). "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id.* (citation omitted); *see also* FED. R. CIV. P. 55(b)(2). Local Rule 55.2(b) requires the moving party to (1) accompany a default judgment motion with the clerk's certificate of default, the complaint, and a proposed form of default judgment; and (2) submit an affidavit attesting that the defendant is neither an infant nor incompetent, is not serving with the armed forces of the United States, and has defaulted in appearance in this action, that service was properly effected under Rule 4 of the Federal Rules of Civil Procedure, and the amount shown is justly due and owing. *See* N.D.N.Y. L.R. 55.2(b).

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." *Bravado Int'l Group Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

"A district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to 'conduct hearings or make referrals' as may be necessary, *inter alia*, to determine the amount of damages or establish the truth of the plaintiff's allegations." *Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 392 (S.D.N.Y. 2012) (quoting FED. R. CIV. P. 55(b)(2)(B)-(C)). "[A] court may rely upon affidavits and documentary evidence" to evaluate the sum of damages in a default judgment, as it does in this case. *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008); *see also Action S.A. v. Marc Rich & Co.*, 951 F. 2d 504, 508 (2d Cir. 1991) (upholding an award of damages in a default judgment without a hearing as the

district judge was "inundated with affidavits, evidence, and oral presentations by opposing counsel").

Although the Court accepts factual allegations in the complaint for purposes of determining liability, the Court must be sure there is proof in the record to support a damages award. *See Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation") (citations omitted); *Overcash*, 549 F. Supp. 2d. at 196 ("[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought") (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "The burden is on the plaintiff to establish [] entitlement to recovery." *Bravado Int'l*, 655 F. Supp. 2d at 189 (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158).

**B. Default Judgment and Liability**

Plaintiff has satisfied the procedural prerequisites for obtaining a default judgment. Plaintiff has properly served Defendant with the summons and complaint, *see* Dkt. No. 5; obtained an entry of default, *see* Dkt. No. 7; served this motion on Defendant, *see* Dkt. No. 13-1 at 16; and provided an affidavit showing that Defendant is not an infant, incompetent, or a member of the United States Military. *See* Dkt. No. 13-2 at ¶ 6. Accordingly, the Court turns to whether Plaintiff has met his burden of demonstrating that he is entitled to the relief requested.

As Defendant has failed to appear in this action, it is deemed to have admitted all well pled, relevant factual allegations for purposes of establishing liability. *See Bravado Int'l*, 655 F. Supp. 2d at 188; *see also United States v. Beam*, No. 12-CV-0087, 2012 WL 1802316, *2 (N.D.N.Y. May 17, 2012) ("By failing to answer [the] plaintiff's complaint or oppose this motion,

[the] defendant has effectively conceded that [it] is bound by the terms of the [agreement it] entered into with [the] plaintiff").

Because Plaintiff brings this action under the ADA, a federal statute, subject-matter jurisdiction is proper pursuant to 28 U.S.C. § 1331. *See* Dkt. No. 1 at ¶ 1. Because his state law claims arise out of the same facts and circumstances, the Court may exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

***1. Standing***

Standing is an "irreducible constitutional minimum." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Therefore, the Court still must evaluate whether Plaintiff has standing even where Defendant has not challenged Plaintiff's standing. *See Garnet v. Ramos Bros. Inc.*, No. 16-CV-2792, 2017 WL 590323, *1 (E.D.N.Y. Feb. 13, 2017) (other citation omitted). "[A] disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Brown v. Mermaid Plaza Assocs. LLC*, No. 13-CV-760, 2018 WL 2722454, *5 (E.D.N.Y. Mar. 8, 2018) (quoting *Chapman v. Pier I Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011)).

"To establish standing, a plaintiff must prove: '(1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision.'" *Hennessy by & through Hennessy v. 194 Bedford Ave Rest Corp.*, No. 21-CV-5434, 2022 WL 4134502, *2 (E.D.N.Y. Aug. 8, 2022) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013)). In ADA cases, "a 'broad view of constitutional standing' is appropriate because 'private enforcement suits are the primary method of obtaining compliance with the Act.'" *Baker v. New York State Dep't of Env't Conservation*, No. 1:10-CV-1016, 2012

WL 2374699, *2 (N.D.N.Y. June 22, 2012) (quoting *Chapman*, 631 F.3d. at 946). Standing exists in an ADA public accommodation case where:

> (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of [the] plaintiff's visits and the proximity of [the public accommodation] to [the] plaintiff's home, that [the] plaintiff intended to return to [the public accommodation].

*Cox v. Anjin LLC*, No. 19-CV-4315, 2020 WL 5027864, *4 (S.D.N.Y. July 24, 2020). "Although plaintiffs have the burden to establish the requisite injury-in-fact, they may do so through 'general factual allegations of injury resulting from the defendant's conduct' at the pleading stage." *Baker*, 2012 WL 2374699, at *2 (quoting *Lujan*, 504 U.S. at 561).

A plaintiff can establish an injury under the ADA by demonstrating: "(1) that [he or] she suffered a direct injury by personally encountering unlawful barriers at the defendant's property; or (2) by showing that [he or] she was deterred from using the property because it does not comply with the ADA." *Chamaidan v. Tomy B. Haircare Inc.*, No. 17-CV-6948, 2019 WL 4917895, *3 (E.D.N.Y. Sept. 30, 2019) (citations omitted). "ADA standing can be established based on a plausible intention to return to the public accommodation as either a patron or as a tester seeking to determine whether the public accommodation has been rendered ADA-compliant." *Hennessy*, 2022 WL 4134502, at *2 (quoting *Harty v. Simon Prop. Grp., L.P.*, 428 Fed. Appx. 69, 71 (2d Cir. 2011)).

Generally, the requisite injury occurs when a plaintiff encounters an accessibility barrier that violates the ADA's provisions; "it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way. Rather, the barrier need only interfere with the plaintiff's 'full and equal enjoyment' of the facility."

*Chapman*, 631 F.3d at 947 (citing 42 U.S.C. § 12182(a)). The plaintiff need not, "await the consummation of threatened injury to obtain preventive relief." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (internal quotation marks and citation omitted). Where, as here, a plaintiff demonstrates an intent to return to, or is deterred from, visiting a noncompliant facility, he suffers a cognizable injury under Article III." *Baker*, 2012 WL 2374699, at *3 (citing *Chapman*, 631 F.3d at 949 (citing *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137-38 (9th Cir. 2002))) *accord Camarillo*, 518 F.3d, at 158.

Courts have found that a plaintiff suffers "an injury under the ADA when he was unable to access certain portions of the [defendant's] [w]ebsite's publicly available content because of his disability[,]" particularly if he was "unable to navigate the [defendant's] [w]ebsite because its navigation tabs were incompatible with his screen-reading software." *Walters v. Fischer Skis U.S., LLC*, No. 6:21-CV-1115, 2022 WL 3226352, *4 (N.D.N.Y. Aug. 10, 2022) (quoting *Camacho*, 2019 WL 6528974, at *26) (other citation omitted). Like Plaintiff, the plaintiffs in *Camacho* and *Fischer Skis*, alleged that the barriers to access "deter[red] [them] from attempting to use the [d]igital [p]latform to buy [the] [d]efendant's goods and services." *Id.* Dkt. No. 1 at ¶ 28. "The Second Circuit has made clear that 'deterrence constitutes an injury under the ADA.'" *Camacho*, 2019 WL 6528974, at *9 (quoting *Kreisler*, 731 F.3d at 188).

Plaintiff alleges that, despite an attempt to access the digital platform, he has been "denied full and equal access to Defendant's online goods, content and services," due to several architectural barriers. Dkt. No. 1 at 21. Plaintiff lists three instances where Defendant's website restricts his access to purchase ski accessories because it is not compatible with screen reader programs that translate the internet into auditory cues for the visually impaired. *See id.* at ¶¶ 8, 27. Because the Second Circuit has made clear that deterrence is an injury, the Court finds that

Plaintiff has met the first prong of standing by alleging past injury under the ADA.

Plaintiff alleges that in the absence of an injunction he "will continue to be[] injured by Defendant's failure to provide its online content and services in a manner that is compatible with screen reader technology." Dkt. No. 1 at ¶ 31. These allegations, accepted as true, establish that Plaintiff has actual knowledge of access barriers to the website, that Plaintiff would patronize the website but for the architectural barriers preventing his access to and use of a screen-reader, and that Plaintiff intends to use the website in the future. *See id.* at ¶ 21.

This Court finds that it is reasonable to infer that the "discriminatory treatment would continue," absent intervention from the Court. *Kreisler*, 731 F.3d at 188. Courts have found that when a plaintiff in unable access content on a website because of a disability, that supports "an inference that the [w]ebsite had not been altered to fix the barriers [p]laintiff encountered, and that he will continue to be unable to access the [w]ebsite." *Fischer Skis*, 2022 WL 3226352, at *4 (quoting *Camacho*, 2019 WL 6528974, at *24).

"[T]he focus of the third factor—*i.e.*, intent to return based on past visits and proximity—is to ensure that 'the risk of harm is sufficiently imminent and substantial' to establish standing." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. —, 141 S. Ct. 2190, 2210 (2021)). "Courts have considered four factors when determining a plaintiff's likelihood of returning to a particular location: '(1) the proximity of plaintiff's residence to the place of public accommodation; (2) plaintiff's past patronage of the business; (3) the definiteness of plaintiff's plans to return[;] and (4) the frequency of plaintiff's travel near the accommodation.'" *Cox*, 2020 WL 5027864, at *4 (citing *Hurley v. Tozzer, Ltd.*, No. 15-CV-2785, 2018 WL 1872194, *5 (S.D.N.Y. Feb. 2, 2018)).

Courts have found that "a 'plausible intention or desire does not require a specific date for

plaintiff's return to the. . . website. . . Plaintiff's statements that he would return to the website in the future to assess whether he could make a reservation' are sufficient to confer standing." *Fischer Skis*, 2022 WL 3226352, at *4 (quoting *Monge v. 405 Hotel, LLC*, No. 19-CV-0451, 2021 WL 982866, *16-17 (E.D.N.Y. Feb. 24, 2021)) (other citations omitted).

Here, Plaintiff alleges that he "would like to, and intends to, attempt to access the Digital Platform in the future to purchase the products and research the services the Digital Platform offers, or to test the Digital Platform for compliance with the ADA, N.Y. Exec. Law § 296, et seq., and the laws of New York." Dkt. No. 1 at ¶ 28. It is reasonable, based on Plaintiff's history of visiting the website and his history as an "avid skier" that he will return to the digital platform to purchase new ski equipment and to check for compliance with the relevant accessibility requirements. *Id* at ¶ 21.

Based on the foregoing, Plaintiff's allegations are sufficient to establish standing to seek injunctive relief. *See Harty*, 428 Fed. Appx. at 71.

***2. Plaintiff Sufficiently Pleaded a Claim Under the ADA***

Title III of the ADA guarantees that individuals with disabilities shall have full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. *See* 42 U.S.C. § 12182(a). To set forth a Title III claim a plaintiff must establish "(1) that [he] is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services defendants provide." *Camarillo*, 518 F.3d at 156; *see also* 42 U.S.C. § 12182(a).

The ADA construes the term "disability" to include, *inter alia*, "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42

U.S.C. § 12102(1)(A). As Plaintiff is, and all times relevant to this matter has been, blind, Plaintiff has demonstrated that he falls within the meaning of "disabled" in the ADA. *See* Dkt. No. 1 at ¶ 12; *Am. Council of Blind of New York, Inc. v. City of New York*, 495 F. Supp. 3d 211, 230 (S.D.N.Y. 2020) (finding that blind and vision impaired plaintiffs are disabled under the ADA); *see also* 29 C.F.R. § 1630.2(j)(1)(iii) ("[T]he threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis").

The Second Circuit has not reached the issue of whether a website is a place of public accommodation. *See Chalas v. Barlean's Organic Oils, LLC*, No. 22-CV-04178, 2022 WL 17156838, *4 (S.D.N.Y. Nov. 22, 2022) ("The Second Circuit has not reached this issue and there is both a circuit split and district court split on the question"). However, many courts in the Second Circuit, relying on *Pallozzi v. Allstate Life Insurance Co.*, have found that a website may be a place of public accommodation because there does not need to be a "'nexus' between the discriminatory conduct and the goods and services of a physical location." *Id.* (collecting cases and citing *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392 (2d Cir. 2000)). In cases similar to this one, courts have held that "the text and purposes of the ADA, as well as the breadth of federal appellate decisions, suggest that [a] defendant's website is covered under the ADA." *Market v. Five Guys Enterprises LLC*, No. 17-CV-788, 2017 WL 5054568, *2 (S.D.N.Y. July 21, 2017) ; *see also Walters v. Simply Skinny Ties, LLC*, No. 6:20-CV-1026, 2020 WL 7248346, *3 (N.D.N.Y. Dec. 9, 2020) (holding that the plaintiff's "complaint plausibly alleges that he is a legally blind individual who has been denied a full and equal opportunity to enjoy the services provided by [defendant] on its website. This kind of injury is cognizable under Title III of the ADA"); *Sarwar v. E. Pine Apartments, LLC*, No. 1:20-CV-1111, 2022 WL 813915, *3 (N.D.N.Y. Mar. 17, 2022) (granting default

judgment to a plaintiff who sought a court order "mandating that the [d]efendant work to bring the websites into compliance with the ADA"); *accord Sarwar v. Lake Placid Hotel Partners, LLC*, No. 8:20-CV-1387, 2021 WL 2778574, *1 (N.D.N.Y. July 2, 2021) (same); *Sarwar v. Town House Motor Inn, Inc.*, No. 6:20-CV-1060, 2021 WL 2805638, *2 (N.D.N.Y. July 6, 2021) (same). This Court agrees that "a website can be a 'place of public accommodation' within the meaning of Title III of the ADA." *Chalas*, 2022 WL 17156838 at *6.

Defendant's website can be categorized under the ADA as a "sales or rental establishment," similar to a "clothing store," which falls within the general categorization of public accommodations listed within the ADA. 42 U.S.C. § 12181(7)(e); *see also Fischer Skis*, 2022 WL 3226352, at *6 (quoting *Nat'l Fed'n of the Blind v. Scribd, Inc.*, 97 F. Supp. 3d 565, 573 (D. Vt. 2015)) (holding that a website is a place of public accommodation under the ADA). Therefore, Defendant's website operations are a public accommodation under the ADA, as required by the second prong of *Camarillo*, 518 F.3d at 156.

Plaintiff satisfies the third prong of *Camarillo* because he has alleged specific barriers to accessibility when he visited Defendant's website to purchase new ski accessories. *See* Dkt. No. 1 at ¶¶ 27, 28; *see also Camarillo*, 518 F.3d at 156 (finding that a plaintiff "cannot experience 'full and equal enjoyment' of [a] defendant's services if [he] is unable to access the list of the services available to [him]"). "[A] failure to remove architectural barriers. . . where such removal is readily achievable," constitutes discrimination under the ADA. 42 U.S.C. § 12182(b)(2)(A)(iv). The Court accepts as true Plaintiff's allegation that the removal of the identified barriers is "readily achievable and may be carried out without much difficulty or expense." Dkt. No. 1 at ¶ 30.

Accordingly, Plaintiff's undisputed allegations establish Defendant's liability under Title

III of the ADA.

***3. Plaintiff Sufficiently Pleaded Claims under the NYSHRL and NYSCRL***

Plaintiff alleges violations of the NYSHRL, N.Y. Exec. Law § 296(2)(a), and NYSCRL, N.Y. Civ. Rights Law § 40-c. *See* Dkt. No. 1 at ¶¶ 42-57. Plaintiff's state claims are based on the same facts underlying his ADA claim. *See* Dkt. No. 1 at ¶¶ 42-57, 58-70. In relevant part, the NYSHRL provides that

> it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent[,] or employee of any place of public accommodation, resort[,] or amusement, because of the. . . disability. . . of any person, directly or indirectly, to refuse, withhold from[,] or deny to such person any of the accommodations, advantages, facilities[,] or privileges thereof.

N.Y. Exec. Law § 296(2)(a).

"The elements that establish ADA violations similarly establish violations under state law." *Suris v. Collive Corp.*, No. 20-CV-06096, 2022 WL 542987, *4 (E.D.N.Y. Jan. 10, 2022). "A claim for disability discrimination under NYSHRL and [NYSCRL] is governed by the same legal standards as the ADA." *Id.* (quoting *Ross v. Royal Pizza Cafe Corp.*, No. 17-CV-6294, 2018 WL 6313208, *4 (E.D.N.Y. Aug. 1, 2018) (citations omitted)); *see also Grinblat v. Apna Food & Oil Corp.*, No. 19-CV-6746, 2020 WL 7481508, *5 (E.D.N.Y. Aug. 26, 2020) ("The elements that establish liability under the ADA are sufficient to state a claim under the [NYSCRL]") (citation omitted); *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the [NYSHRL] is governed by the same legal standards as govern federal ADA claims. Thus, to the extent that [the plaintiff] brings a state-law disability-discrimination claim, it survives or fails on the same basis as his ADA claim") (citations

omitted).

Given that Plaintiff has stated a claim under the ADA, Plaintiff's motion is granted with respect to his NYSHRL and NYSCRL claims.

**C. Remedies**

***1. Monetary Relief***

Plaintiff seeks "reasonable attorneys' fees and costs," pursuant to 42 U.S.C. § 12205, which permits a "prevailing party" in a case brought pursuant to the ADA to recover a "reasonable attorney's fee." 42 U.S.C. § 12205. "A prevailing party is a party who 'obtained an enforceable judgment, consent decree, or settlement giving some of the legal relief sought.'" *Hofler v. Family of Woodstock, Inc.*, No. 1:07-CV-1055, 2012 WL 527668, *2 (N.D.N.Y. Feb. 16, 2012) (quoting *Buckhannon Bd. & Care Home., Inc. v. W. Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 602 (2001)). However, Plaintiff has not presented a billing report, attorney affidavit indicating the hours spent on this matter, or any other calculation or proof of the requested fees. With respect to his request for costs pursuant to 42 U.S.C. § 12205, Plaintiff has not submitted any documentation to support his assertion that he has incurred costs or otherwise asserted the amount of such costs. *See generally* Dkt. Nos. 1, 13.

Plaintiff further requests "compensatory damages" under the NYSHRL, and "nominal damages." Dkt. No. 1 at ¶ 55, p.20. Plaintiff has not provided any proof or even requested a specific amount of damages. *See generally* Dkt. Nos. 1, 13.

In the absence of such documentation, the Court declines to consider Plaintiff's request. *See Flaks*, 504 F.2d. at 707 (holding that a plaintiff moving for default judgment must establish the amount of damages). However, the Court will provide Plaintiff with an opportunity to submit

the required documentation if he wishes to pursue this request. If Plaintiff submits the required documentation, and the Court grants his request for costs, the Court will direct the Clerk of the Court to amend the judgment accordingly.

***2. Injunctive Relief***

In addition to monetary damages, Plaintiff seeks a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a) preventing Defendant's "discriminatory practices" and directing Defendant to perform its obligations to Plaintiff and other similarly situated individuals. Dkt. No. 13-1 at 12. Plaintiff asks that this Court continue monitoring Defendant's corporate policies to ensure that its digital properties remain accessible to individuals with visual disabilities. *See* Dkt. No. 1 at 20. To ensure that a digital platform has been made and remains accessible, Plaintiff contends "the digital platform must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals." *Id.* at ¶ 18.

Title III of the ADA provides "any person who is being subjected to discrimination on the basis of disability in violation of [Title III]" with a private right to "injunctive relief," which "include[s] an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by [Title III]" if the court finds that the defendant failed to remove architectural barriers pursuant to Section 12182(b)(2)(A)(iv). *Cox*, 2020 WL 5027864, at *7 (quoting 42 U.S.C. § 12188(a)(1)-(2)); *see also Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077, 2019 WL 6916098, *3 (S.D.N.Y. Dec. 19, 2019); *Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, *4 (E.D.N.Y. Dec. 20, 2013). "The Court 'may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets

the prerequisites for the issuance of an injunction.'" *WowWee Grp. Ltd. v. Haoqin*, No. 17-CV-9893, 2019 WL 1316106, *5 (S.D.N.Y. Mar. 22, 2019) (quoting *N. Face Apparel Corp. v. Moler*, 2015 WL 4385626, *8 (S.D.N.Y. July 16, 2015)); *see also Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) (quoting *N.Y. State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989)) ("To obtain a permanent injunction, the plaintiff must succeed on the merits and 'show the absence of an adequate remedy at law and irreparable harm if the relief is not granted'").

Here, the first aspect is satisfied because the ADA explicitly provides a private right of action for injunctive relief and Plaintiff has established that Defendant has discriminated against him in violation of the ADA. 42 U.S.C. § 12188(a); *see Shariff*, 2013 WL 6835157, at *5; *Dunbar v. Buddha Bodai Two Kosher Vegetarian Restaurant, Inc.*, No. 1:19-CV-05176, 2020 WL 12863802, *9 (S.D.N.Y. Nov. 24, 2020). Because the Court has determined that Defendant is liable for its failure to comply with the ADA, Plaintiff is entitled to some form of relief permitted by the ADA.

To determine whether the prerequisites for the issuance of an injunction are met, the Court considers "well-established, generally applicable principles of equitable relief." *Dunbar*, 2020 WL 12863802, at *9. Because Plaintiff has succeeded on the merits, the Court may enter a permanent injunction if he satisfies the following four-factor test:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MereExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Here, the first, second, and fourth *eBay* factors are clearly satisfied. Plaintiff has suffered irreparable harm because he was excluded from participating in the full and equal enjoyment of the website and its retail opportunities. *See Kreisler*, 731 F.3d at 187-88. Remedies at law are unavailable to Plaintiff under the ADA, and therefore they cannot compensate for his injury. *See Dunbar*, 2020 WL 12863802, at *9. "The public has an interest in enforcing compliance with the ADA, which furthers the policy goal of a 'clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Id.* (quoting 42 U.S.C. § 12101(b)(1)).

Because Defendant has not replied to this action, there are no allegations that the burden or cost of relief to be ordered pose a significant hardship to Defendant which outweighs the benefit of allowing Plaintiff equal use and enjoyment of public accommodations. Without an injunction requiring Defendant's ADA compliance, Plaintiff is harmed by being denied the equal opportunity to participate in commerce and equal dignity in the public market. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 607 (2023) (Sotomayor, J. dissenting) (citations omitted) (describing public accommodation laws as "vindicate[ing] the deprivation of personal dignity that surely accompanies denials of equal access to public establishments").

Looking to similar cases, the Court finds that the injunction allowing Defendant to continue offering its online services during the remediation period does not pose an undue burden on Defendant. *See Sarwar*, 2022 WL 813915, at *3 (granting an injunction ordering the defendant to bring its website into compliance with the ADA); *Sarwar*, 2021 WL 2778574, at *3 (same). Ordinarily, as the *Panarese* court noted, "[w]hen a plaintiff demonstrates that a defendant has failed to remove barriers in violation of 42 U.S.C. § 12182(b)(A)(iv), 'injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by

individuals with disabilities.'" *Panarese v. Sell It Soc., LLC*, No. 19-CV-3211, 2020 WL 4506730, *3 (E.D.N.Y. July 2, 2020) (quoting 42 U.S.C. § 12188(a)(2)). "In the case of an inaccessible website, the courts frequently rely on WCAG 2.0 [the Web Content Accessibility Guidelines] to provide an objective standard against which to measure accessibility." *Duncan v. Skin Bar NYC, LLC*, No. 19-CV-5188, 2021 WL 9204082, *5 (S.D.N.Y. May 18, 2021). Therefore, Plaintiff's request that Defendant be required to come into compliance with the WCAG 2.0 is not unreasonable. *See* Dkt. No. 13-1 at 13; *see Panarese*, 2020 WL 4506730, at *4; *see also Dominguez v. N.Y. Equestrian Ctr., Ltd.*, No. 18-CV-9799, 2020 WL 5796275, *3 (S.D.N.Y. Sept. 28, 2020) ("Defendant is ordered to take all necessary steps to bring its website into compliance with the ADA and its implementing regulations").

Accordingly, the Court grants Plaintiff's request for injunctive relief and orders Defendant to take the steps necessary to remedy the existing ADA violations. *See Thorne*, 2019 WL 6916098, at *3 (following default, granting injunctive relief ordering defendant "to take all necessary steps to bring its website into compliance with the ADA and its implementing regulations"); *Cox*, 2020 WL 5027864, at *7 (same); *Duncan*, 2021 WL 9204082, at *5.

## IV. CONCLUSION

Upon careful consideration of the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Plaintiffs' motion for default judgment (Dkt. No. 13) is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Plaintiffs' motion for default judgment (Dkt. No. 13) is **GRANTED** with respect to the injunctive relief Plaintiff seeks; and the Court further

**ORDERS** that the Defendant remediate its website to bring it in compliance with federal regulations and review the DOJ guidelines regarding ADA website compliance and make all parts of the website accessible to screen-readers **within sixty (60) days** after the issuance of this order; and the Court further

**ORDERS** that the Plaintiff's motion for default judgment (Dkt. No. 13) is **DENIED** with respect to the monetary damages with leave to submit the required documentation within **fourteen (14) days** after the issuance of this order; and the Court further

**ORDERS** that Pursuant to 42 U.S.C. § 12188(a)(2), Defendant, and all persons and entities in privity, combination, participation or acting in concert with Defendant, including but not limited to its agents, servants, employees, franchisees, distributors, licensees, successors and assigns, attorneys, officers and directors, whether on behalf of any other business entity heretofore or hereafter created, shall take the following steps necessary to bring its Website, https://www.campsaver.com/, into full compliance with the requirements set forth in the ADA and its implementing regulations, so that it is fully accessible to and independently usable by blind individuals. To ensure Defendant's remediation plan is sufficient, Defendant shall:

a. retain, at its expense, ADASure ("Mutually Agreed Upon Consultant"), who shall assist Defendant in improving the accessibility of its Website so that it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA") by conducting (1) an accessibility audit on critical use paths within https://www.campsaver.com/for conformance with WCAG 2.0 (AA) standards; (2) a 2-day onsite combined Developer/QA training session; and (3) monthly testing for a period of two years after the Mutually Agreed Upon Consultant verifies Defendant's website conforms with WCAG 2.0 (AA) in a Letter of Conformance;

b. work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

c. work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a monthly basis to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

d. work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

e. incorporate all of the Mutually Agreed Upon Consultant's recommendations within **sixty (60) days** after the issuance of this order;

f. directly link from the footer on each page of the Website a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant through the Website;

g. work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll-free phone number to report accessibility-related problems;

h. provide a notice, prominently and directly linked from the footer on each page of the Website, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an

accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

i. provide a copy of the Web Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website;

j. train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. Defendant shall have trained no fewer than three of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance; and,

k. modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology; and the Court further

**ORDERS** that Plaintiff, his counsel, and experts may monitor the accessibility of the Website for up to two (2) years after the date of the Mutually Agreed Upon Consultant's Letter of Conformance. To this end, Plaintiff, through his counsel and experts, shall be entitled to consult with the Mutually Agreed Upon Consultant at their discretion, and to review any written material the Mutually Agreed Upon Consultant provides Defendant; and the Court further

**ORDERS** that the Court shall retain jurisdiction for a period of **two (2) years** after the date of the Mutually Agreed Upon Consultant's Letter of Conformance to ensure Defendant has adopted and implemented adequate accessibility maintenance policies; and the Court further

**ORDERS** that Plaintiff, as the prevailing party, may file a fee petition before the Court surrenders jurisdiction. Pursuant to *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), supplemented, 483 U.S. 711 (1987), and *Garrity v. Sununu*, 752 F.2d 727, 738-39 (1st Cir. 1984), the fee petition may include the costs to monitor Defendant's compliance with the permanent injunction; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiff's favor; and the Court further

**ORDERS** that the Clerk is directed to **close this case**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 09, 2024
Albany, New York

Mae A. D'Agostino
U.S. District Judge